Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Anne K. Davis (SBN 267909)
adavis@bfalaw.com
Joshua Samra (SBN 313050)
jsamra@bfalaw.com
**BLEICHMAR FONTI & AULD LLP**
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

Attorneys for Plaintiff Michael Van Ness
(*Additional counsel listed on signature page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Van Ness, on behalf of himself and all others similarly situated, | No. 19-cv-07153 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| FCA US LLC, AMERICAN HONDA MOTOR CO., HYUNDAI MOTOR AMERICA, KIA MOTORS AMERICA, MITSUBISHI MOTORS NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., ZF-TRW AUTOMOTIVE HOLDINGS CORP., and TRW AUTOMOTIVE U.S. LLC, | |
| Defendants. | |

Table of Contents

I.     INTRODUCTION ........................................................................................1

II.    NATURE OF THE ACTION ....................................................................1

III.   PARTIES ....................................................................................................9

       A.     Plaintiff ...........................................................................................9

       B.     Manufacturer Defendants ................................................................9

       C.     ZF-TRW Defendants .....................................................................12

IV.    JURISDICTION AND VENUE ...............................................................13

V.     FACTUAL ALLEGATIONS ...................................................................15

       A.     Airbag Control Units .....................................................................15

       B.     The NHTSA Investigation .............................................................21

       C.     Defendants Knew of the ACU Defect and the Risks to
              Vehicle Operators and Passengers ................................................24

       D.     The Class Vehicles ........................................................................28

VI.    CLASS ACTION ALLEGATIONS .........................................................32

       A.     Class Definitions ...........................................................................32

       B.     Class Certification Requirements ...................................................34

VII.   ANY APPLICABLE STATUTES OF LIMITATION ARE
       TOLLED ...................................................................................................39

       A.     Discovery Rule ..............................................................................39

       B.     Equitable Tolling ...........................................................................40

       C.     Equitable Estoppel .........................................................................40

i

VIII.  CLAIMS FOR RELIEF ................................................................................41

  A.  Claims Asserted on Behalf of the Nationwide Class .......................41

  B.  Claims Asserted on Behalf of the New York Class .........................50

IX.  PRAYER FOR RELIEF .............................................................................65

X.  DEMAND FOR JURY TRIAL ..................................................................66

# I. INTRODUCTION

Plaintiff Michael Van Ness ("Van Ness" or Plaintiff) brings this action on behalf of himself and on behalf of a class of all persons and entities similarly situated (the "Class"), for damages and equitable relief against defendants FCA US LLC ("FCA"), American Honda Motor Co. ("Honda"), Hyundai Motor America ("Hyundai"), Kia Motors America ("Kia"), Mitsubishi Motors North America, Inc. ("Mitsubishi"), Toyota Motor Sales, U.S.A. ("Toyota") (collectively, the "Manufacturer Defendants"); ZF-TRW Automotive Holdings Corp., and TRW Automotive U.S. LLC (with ZF-TRW Automotive Holdings Corp., "ZF-TRW" and the "ZF-TRW Defendants" and collectively with the Manufacturer Defendants, and hereinafter "Defendants"). Based on the investigation of counsel, Plaintiff alleges on information and belief as follows:

# II. NATURE OF THE ACTION

1.    This action arises out of yet another scheme to conceal a deadly defect affecting airbag performance and a delay in reporting of and recall of vehicles affected by the defect, as automakers and their suppliers yet again prioritize their financial interests over consumer safety. The National Highway Traffic Safety Administration ("NHTSA") estimates that between 2010 and the present (the "Class Period"), a defective Airbag Control Unit ("ACU") designed and manufactured by ZF-TRW and supplied to numerous vehicle manufacturers,

including FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota, has been installed in some 12.5 million vehicles.[1]

2.    Airbag systems (also known as supplemental inflatable restraints) and supplemental safety restraints such as seat belt pretensioners are critical safety features in virtually every car and light truck sold in the United States and globally.[2] In an accident, properly functioning safety systems can mean the difference between minor injury, serious injury, and death. Vehicle purchasers, drivers, and passengers ordinarily and reasonably expect that airbags and other supplemental restraints will properly deploy in the event of an accident.

3.    Airbag systems work through the use of sensors monitored by an ACU. Upon detection of impact through the sensors, a properly functioning ACU monitors the readiness of the entire airbag system and determines which airbags to deploy. Upon airbag deployment, an airbag initiator—typically a small pyrotechnic device within an individual airbag, generates a small electric charge to ignite

---

[1] NHTSA Office of Defect Resume, Investigation EA 19-001 (Apr. 19, 2019) https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF [hereinafter 2019 ODI Resume).

[2] Airbags have been mandatory for all cars and light trucks sold in the United States since 1998. *Airbags*, NHTSA https://www.nhtsa.gov/equipment/air-bags (last visited Aug. 15, 2019). All new cars and light trucks sold since model year 2008 have been equipped with seat belt pretensioners. *See* Kahane, C. J., NHTSA, Effectiveness of pretensioners and load limiters for enhancing fatality reduction by seat belts, at iv. Rep. No. DOT HS 811 835. (Nov. 2013).

2

combustible materials and inflate the airbag, lessoning the impact damage to a

vehicle occupant's body.

4.    Seat belt pretensioners work in tandem with seat belts and airbag

systems in the event of a crash, through the same ACU. When a properly

functioning ACU sensor detects a crash, the seat belt pretensioner deploys, driving

a concealed piston to rapidly spool the seatbelt and remove seat belt slack. By

removing slack, the pretensioner positions the body of a seat belt wearer firmly

against the seat to receive the maximum protection from the vehicle's airbags. A

seat belt pretensioner also prevents the momentum from a crash from propelling a

seat belt wearer under the lap belt below the vehicle's dash. If a seat belt

pretensioner is not deployed by the ACU, the seat belt wearer is at increased risk of

injury or death.

5.    ACUs are critical to the proper functioning of airbag and supplemental

restraint systems. When installed in a vehicle, the ACU is located in the passenger

compartment. Electrical wiring connects an internal electronic component—and

application specific integrated circuit ("ASIC")—to sensors located at the front of

the vehicle. ACUs sense a vehicle crash using the ASIC to monitors signals from

crash sensors to determine whether air bag and supplemental restraint deployment

is required, and if so, deploys the appropriate air bags and supplemental restraints.

3

A failure of the ASIC may prevent deployment of the required air bags and restraints or may otherwise affect the proper operation of the ACU.

6.    On March 16, 2018, NHTSA's Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation investigation ("PEI") into the defective ACUs (the "ACU Defect") based on six frontal crashes involving Hyundai and Kia vehicles, reported via Early Warning Reporting ("EWR") between 2012 and 2017, where airbags did not deploy.[3] Reporting submitted to the NHTSA between 2012 and 2017 indicate that these frontal crashes resulted in six injuries and four deaths.[4]

7.    The PEI investigation described the problem as "[f]ailure of the air bag control unit may prevent the frontal air bags from deploying in the event of a crash," and identified ZF-TRW as the supplier of the defective ACUs.[5] The PEI investigation also indicated that other manufacturers using the same or similar ACUs supplied by ZF-TRW could fall within the scope of the investigation, putting the Manufacturer Defendants on notice of the ACU Defect.[6]

---

[3] NHTSA Office of Defect Resume, Investigation EA 19-001 (Mar. 16, 2018) https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF [hereinafter 2018 ODI Resume).
[4] *Id*.
[5] *Id*.
[6] *Id.*

4

8.    On April 19, 2019, NHTSA ODI upgraded its PEI into the ACU Defect to an Engineering Analysis and expanded the investigation to include ZF-TRW and to manufacturers supplied by ZF-TRW: the Manufacturer Defendants.[7] NHTSA ODI estimates that 12.3 million vehicles contain the ACU Defect.[8]

9.    During a crash event, according to NHTSA's investigation, the defective ZF-TRW ACUs "may suffer electrical overstress due to harmful signals (electrical transients) produced by a crash event itself, causing the malfunction of the ASIC."[9]

10.    As a result of the overstress of the ASIC in the ZF-TRW ACUs (the "ACU Defect" or "Defect"), the airbags installed in the affected vehicles do not properly deploy during a crash. The NHTSA's investigation indicates that the ZF-TRW ACU ASIC is designed without sufficient electrical circuitry protection to prevent harmful electrical signals to enter the ACU via sensor. This results in EOS and a system failure. The ACU Defect can also result in the ACU's inability to be

---

[7] 2019 ODI Resume, *supra* note 1, at 1; *see also*, Benjamin Raven, *Feds expand probe into air bags that may not inflate in crash to 12.3M vehicles*, MLive.com, (Apr. 25, 2019), https://www.mlive.com/news/2019/04/feds-expand-probe-into-air-bags-that-may-not-inflate-in-crash-to-123m-vehicles.html.
[8] 2019 ODI Resume, *supra* note 1, at 1.
[9] *Id.*

5

read with the Event Data Recorder ("EDR"), a device which preserves data in the event of a crash.[10]

11.    Because of the ACU Defect, ZF-TRW ACUs fail. Instead of deploying critical safety system components such as airbags and seatbelt pretensioners to protect vehicle occupants from bodily injury and death during accidents, the defective ZF-TRW ACUs may fail to send a signal to deploy airbags and engage seatbelt pretensioners, causing vehicle occupants to suffer serious bodily injury. ZF-TRW ACU failures have been detected in vehicles with varying levels of electrical circuitry protection—from low to high—indicating that the defect is inherent to the design of the ZF-TRW ACU itself.

12.    The Manufacturer Defendants knew or should have known of the ZF-TRW ACUs' inherent design defect through their participation in the development, design, and testing of the ACUs and through incidents of ACU failure dating back to at least 2011.

13.    Plaintiff and Class members each purchased or leased a Class Vehicle (as defined below) in the United States.

14.    On behalf of himself, the Nationwide Class, and the New York State Class, Plaintiff hereby brings this action for violations of the Magnuson–Moss

---

[10] *Id.* at 2.

6

Warranty Act (15 U.S.C. § 2301 et seq. ("MMWA")); for violations of state consumer protection laws; and for common law fraud, contract, warranty, and unjust enrichment claims.

15.   No reasonable consumer expects to purchase or lease a Class Vehicle that contains a concealed safety risk stemming from the potential failure of a critical passenger safety system; the risk that as a result of the ACU Defect an airbag and/or supplemental restraint will not deploy during an accident.

16.   The ACU Defect is material to Plaintiff and Class members because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would contain properly functioning and safety-critical airbag and supplemental restraint systems, including a defect-free and properly functioning ACU. Had Defendants disclosed the ACU Defect, Plaintiff and Class members would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.

17.   Indeed, Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the ACU Defect from Plaintiff and Class members. Defendants possessed knowledge and information regarding the ACU Defect and the associated safety risk; and did not disclose that knowledge to Plaintiff and Class Members.

7

18.   Plaintiff and Class Members could not reasonably discover the defect

through due diligence. Based on the Manufacturer Defendants' participation with

ZF-TRW in pre-production testing, design failure mode analysis, wrongful death

and personal injury lawsuits resulting from the ACU Defect, post-collision

inspections, vehicle owner questionnaires, and NHTSA investigations, Defendants

were aware of the ACU Defect and fraudulently concealed the defect from Plaintiff

and Class Members.

19.   Notwithstanding this knowledge, ZF-TRW continued selling defective

ACUs and the Manufacturer Defendants continued selling Class Vehicles equipped

with airbag systems containing the ACU Defect. Defendants failed to disclose the

existence of the ACU Defect to Plaintiff and Class Members and have not

remedied the ACU Defect and/or compensated Plaintiff or Class members for this

material defect. In addition, the Manufacturer Defendants have not issued recalls

for all of the Class Vehicles containing the ACU Defect. Rather, Defendants

wrongfully and intentionally concealed the ACU Defect from Plaintiff and Class

members.

20.   As a direct result of Defendants' conduct, Plaintiff and Class Members

have been harmed and are entitled to actual damages, including damages for

diagnosis, repair and/or replacement costs, damages for the diminished value of

8

their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

### III.    PARTIES

**A.    Plaintiff**

21.    Plaintiff Michael Van Ness, a resident of Poughkeepsie, New York, owns a 2016 Toyota Tacoma, which he purchased in New York. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect, and the value of that vehicle has been diminished as a result of the ACU Defect. Plaintiff's Class Vehicle has not had the airbag system, including the ACU, repaired or replaced. Had Plaintiff Van Ness known the truth about the Class Vehicle, he would have paid less for it or would have chosen to purchase a competing vehicle.

**B.    Manufacturer Defendants**

22.   Defendant FCA US, LLC ("FCA") is a Delaware limited liability company, headquartered in Auburn Hills, Michigan. In January 2014, Chrysler Group LLC renamed itself FCA US, LLC. FCA designs, engineers, manufactures, markets and/or sells vehicles under the Chrysler, Dodge, Jeep, Ram, FIAT and Alfa Romeo brands, as well as the Street & Racing Technology ("SRT") performance designation, throughout the United States, through its network of authorized motor vehicle dealers. FCA engages in interstate commerce by selling

9

vehicles through its authorized dealers located in every state of the United States, including within this District.

23. Defendant Honda (American Honda Motor Co., Inc.) ("Honda") is a California corporation, with its corporate headquarters located in Torrance, California. Honda designs, engineers, manufactures, markets and/or sells vehicles under the Honda and Acura brands throughout the United States, through its network of authorized motor vehicle dealers. Honda engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

24. Defendant Hyundai Motor America, Inc. ("Hyundai") is a Delaware corporation with its principal place of business located in Fountain Valley, California. Hyundai designs, engineers, manufactures, markets and/or sells vehicles under the Hyundai brands throughout the United States, through its network of authorized motor vehicle dealers. Hyundai engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

25. Defendant Kia Motor America, Inc. ("Kia") is a Delaware corporation with its principal place of business located in Irvine, California. Hyundai designs, engineers, manufactures, markets and/or sells vehicles under the Kia brands

10

throughout the United States, through its network of authorized motor vehicle dealers. Kia engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

26. Defendant Mitsubishi Motors North America, Inc. ("Mitsubishi") is a Delaware corporation with its administrative headquarters and research and developments office in Cypress, California. Mitsubishi's parent company, Mitsubishi Motors Corporation, is a Japanese multinational automotive manufacturer, based in Minato, Tokyo, Japan. Mitsubishi engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

27. Defendant Toyota Motor Sales, U.S.A., In. ("Toyota") is a California corporation, with its corporate headquarters located in Plano, Texas. Toyota's parent company, Toyota Motor Corporation, is a Japanese multinational automobile manufacturer, based in Toyota, Aichi Prefecture, Japan. Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota brand throughout the United States, through its network of authorized motor vehicle dealers. Toyota engages in interstate commerce by selling vehicles

11

through its authorized dealers located in every state of the United States, including within this District.

28. FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota together are referred to herein as the "Manufacturer Defendants." At all times relevant to this action, the Manufacturer Defendants and/or their agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States.

**C.    ZF-TRW Defendants**

29. ZF-TRW Automotive Holdings Corp. ("ZF-TRW") is a Delaware corporation with its principal place of business located at 12001 Tech Center Drive, Livonia, Michigan and ZF-TRW is a citizen of the States of Delaware and Michigan. ZF-TRW was formed on or around May 15, 2015 when ZF Friedrichshafen AG ("ZF") acquired TRW Automotive Holdings Corp. All references to ZF-TRW include the actions of TRW Automotive Holdings Corp. prior to the acquisition.

30. Defendant TRW Automotive U.S. LLC ("TRW Automotive" and with ZF-TRW, the "ZF-TRW Defendants") is a Delaware limited liability company, with its corporate headquarters located in Livonia, Michigan.

12

31.  ZF-TRW designs, manufactures, and sells automotive systems, modules, and components to automotive original equipment manufacturers, including airbag systems. The ZF-TRW Defendants engage in interstate commerce by selling automotive systems throughout the United States, including within this District.

32.  At all times relevant to this action, the ZF-TRW Defendants and/or their agents manufactured, distributed, sold, and warranted airbag systems and components, including ACUs, containing the ACU Defect, as described herein, throughout the United States.

## IV.  JURISDICTION AND VENUE

33.  Jurisdiction exists under pursuant to 28 U.S.C. §§ 1331, 1961, 1962 and 1964, because Plaintiff's Magnusson-Moss claims arise under federal law. Also, Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because members of the proposed Classes are citizens of states different from each Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Further, greater than two-thirds of Class members reside in states other than the states in which Defendants are citizens.

13

34.   The Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d) and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

35.   This Court has both specific and general personal jurisdiction over Defendants because it maintains minimum contacts with the United States, this judicial district, and this state. Each Defendant purposely availed itself of the laws of this state by conducting a substantial amount of its business in the state, including designing, testing, manufacturing, and/or distributing vehicles, including the Class Vehicles, in this state and District. Certain of the Manufacturer Defendants also developed, prepared, and disseminated warranty materials for the Class Vehicles within and from its headquarters in this state and District. Hundreds or thousands of Class Vehicles were sold or leased at franchise dealerships in this state and ply this state's roads.

36.   Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to Plaintiff's claims occurred in this District. Specifically, some Defendants, including Honda, Hyundai, and Kia are headquartered in this District.

14

## V.    FACTUAL ALLEGATIONS

**A.    Airbag Control Units**

37.    The airbag systems in the Class Vehicles contain ACUs which sense vehicle crashes and evaluate whether airbag and supplemental restraint deployment is necessary in the event of an impact. The ACU is located in the Class Vehicles' passenger compartments and is electrically connected to crash sensors located at the front of the Class Vehicles. Based on the results of the sensor, the ACU will deploy the appropriate airbag and other safety restraints to protect drivers and passengers from an accident or impact.

38.    The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles. If the ASIC fails, the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed.[11]

39.    According to NHTSA ODI, in the airbag systems in the Class Vehicles, the ACUs are experiencing electrical overstress due to harmful electrical signals, which then damages the ASIC.[12] This causes the ACUs to stop working, and as a

---

[11] 2019 ODI Resume, *supra* note 1, at 1, *passim*.
[12] *Id*.

15

result, the proper airbag and supplemental restraints are not deploying during a crash—subjecting Plaintiff and Class members to injury and death.

40.   The ACU is intended to have electrical wiring and circuitry that prevents the transmission of harmful signals that may damage the ASIC.[13] Upon information and belief, the ACUs in the Class Vehicles do not contain sufficient ASIC protection to avoid electrical overstress, which results in failure of the airbags to deploy when needed.

41.   As early as August 2011, ZF-TRW and Hyundai/Kia had knowledge of the ACU Defect. At the request of the parts and service arm of Hyundai and Kia—Hyundai Mobis—ZF-TRW analyzed the ACU from a Kia Forte in China. The Forte was involved in an accident in which the airbags purportedly did not deploy, and ZF-TRW observed that the ACU ASIC from that vehicle showed signs of damage consistent with EOS.[14]

42.   In March 2012, Hyundai Mobis again asked ZF-TRW to analyze an ACU from a Kia Forte that was involved in an accident in Egypt where the airbags

---

[13] *Id.*

[14] NHTSA, *TRW Automotive (ZF) Chronology*, https://static.nhtsa.gov/odi/rcl/2018/RMISC-18E043-5831.pdf (last visited on Aug. 15, 2019.) [hereinafter, *Chronology*]

16

purportedly did not deploy. Again, ZF-TRW observed that the ACU ASIC showed signs of damage consistent with EOS.[15]

43.  In May 2012, ZF-TRW communicated with Hyundai/Kia and Hyundai Mobis regarding its investigation of observed incidents of EOS in the field.[16]

44.  Throughout 2015, ZF-TRW and Hyundai/Kia continued to investigate incidents of ACU Defect, including by analyzing or attempting to analyze data from the ACUs of vehicles involved in non-deployment incidents around the globe, including a February 2015 incident involving a Hyundai Sonata, a May 2015 incident involving a Kia Forte; and two separate December 2015 incidents involving Kia Fortes.[17]

45.  In September 2016, FCA issued a recall relating to the ACU Defect affecting over 1.4 million vehicles, reporting to the NHTSA that "vehicles may experience loss of air bag and seat belt pretensioner deployment capability in certain crash events due to a shorting condition resulting in a negative voltage transient that travels to the Occupant Restraint Controller ("ORC") via the front

---

[15] *Id*.
[16] *Id*.
[17] *Id*.

17

impact sensor wires damaging an Application Specific Integrated Circuit ("ASIC") in the ORC."[18]

46.   Hyundai/Kia and ZF-TRW continued their investigations throughout 2016 and 2017, as non-deployment incidents continued to occur, including an August 2016 investigation into a non-deployment event involving a Kia Forte; a November 2016 investigation into a non-deployment event involving a Hyundai Sonata; a February 2017 investigation into a non-deployment event involving a Hyundai Sonata; a March 2017 investigation into a non-deployment event involving a Kia Forte; and an August 2017 investigation into two separate incidents involving Hyundai Sonatas.[19]

47.   Despite the occurrence of non-deployment events connected to ZF-TRW ACUs over a more than four-year period, Hyundai and Kia failed to issue recalls of any affected vehicles until 2018.

48.   On February 27, 2018, Hyundai filed a recall relating to the ACU Defect affecting approximately 155,000 vehicles. Hyundai reported to the NHTSA that "post-collision inspections of the [ACUs] showing that [EOS] of an ACU

---

[18] NHTSA, Part 573 Safety Recall Report 16V-668, Chrysler (FCA US LLC) at 2 (Sep. 16, 2016), https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V668-8284.pdf [*hereinafter* NHTSA Recall No. 16V-668].
[19] *Chronology*, *supra* note 14, at 2.

18

electronic component occurred in three of the crashes, and that the fourth ACU is

under evaluation for the same concern."[20] At that time, Hyundai reported that it

had "not identified a remedy for this recall" and disclosed that the "cause of the

EOS is being investigated with the ACU supplier, ZF-TRW."[21]

49.   Hyundai described the vehicles recalled as a result of the ACU Defect

as "equipped with an [ACU] which detects a crash signal and commands

deployment of the airbags and seat belt pretensioner. In some airbag non-

deployment allegations, [EOS] was observed on an [ASIC] inside the ACU." The

Hyundai recall further described the cause as "EOS was observed on an ASIC

inside the ACU" and explained the safety risk as follows: If the ACU circuitry is

damaged, the airbags and seat belt pretensioners may not deploy in some crashes

where deployment is necessary, increasing the risk of injury."[22]

50.   On June 1, 2018, Kia filed a recall relating to the ACU Defect affecting

approximately 507,000 vehicles.  Kia stated that the "recalled vehicles are

---

[20] NHTSA, Part 573 Safety Recall Report 18V-137 (Hyundai Motor America)
(Feb. 27, 2018) https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V137-5161.PDF
[*hereinafter* NHTSA Recall No. 18V-137].
[21] 2018 ODI Resume, *supra* note 3, at 1.
[22] NHTSA Recall No. 18V-137, *supra* note 20 at 1.

19

equipped with an Advanced Airbag System ("AAS"). The [ACU] in these vehicles may be susceptible to [EOS] during certain frontal crash events."[23]

51.   The Kia recall further described the cause of the defect as an "ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection" and explained the safety risk as follows: "[i]f the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury."[24]

52.   In addition, ZF-TRW and certain of the Manufacturer Defendants have been the subject of customer complaints, personal injury and wrongful death lawsuits alleging that airbags failed to deploy in accidents as a result of the ACU Defect. As of July 2019, ZF-TRW's defective ACUs are reported to be responsible for as many as eight deaths and six serious injuries, worldwide.[25]

---

[23] NHTSA, Part 573 Safety Recall Report 18V-363 (Kia Motors America) (Jun. 1, 2018) ("NHTSA Recall No. 18V-363") (Jun 1, 2018) https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V363-7061.PDF [*hereinafter* NHTSA Recall No. 18V-363].

[24] *Id*. at 4.

[25] Mike Spector, *U.S. Investigates Failing Air Bags in Hyundai, Kia Cars*, The Wall Street Journal (Mar. 19, 2018) https://www.wsj.com/articles/u-s-investigates-failing-air-bags-in-hyundai-kia-cars-1521473711; Benjamin Raven, *supra*, note 7.

20

**B.    The NHTSA Investigation**

53.    As discussed above, NHTSA opened a PEI investigation on March 16, 2018 into the ACU Defect, which, at that time, had caused front air bags to fail to deploy in numerous crashes, resulting in at least six injuries and four deaths. The PEI investigation identified certain vehicles manufactured by Hyundai and Kia and identified ZF-TRW as the supplier of the defective ACUs.[26]

54.    At that time, NHTSA ODI indicated certain Kia vehicles "also use similar ACUs supplied by ZF-TRW" and that there was "a prior recall, 16V-668 where EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles."[27]

55.    While the PEI investigation focused on Hyundai and Kia vehicles containing the ACU Defect, because NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, the Manufacturer Defendants, each of which also used ZF-TRW as a supplier of ACUs, were put on notice of the ACU Defect.

56.    As a result of the PEI investigation, Hyundai and Kia instituted recalls of certain vehicles affected by the ACU Defect, including: 2011 Sonatas; 2010-2013 model year Fortes; 2010-2013 model year Forte Koups; 2011-2013 model

---

[26] 2018 ODI Resume, *supra* note 3, at 1.
[27] *Id.*; *see also*, NHTSA Recall No. 16V-668.

21

year Optimas; 2011-2013 model year Optima Hybrids; and 2011-2012 model year Sedonas.[28]

57.  On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect to an Engineering Analysis.[29] Such an upgrade of an NHTSA investigation occurs only after specific criteria are met signifying the need for an enhanced investigation.[30]

58.  An Engineering Analysis entails "a more detailed and complete analysis of the character and scope of the alleged defect," building on the information collected during the initial investigation.[31] As a result of an Engineering Analysis, NHTSA may recommend a safety recall or work with a manufacturer to issue a safety recall.

59.  NHTSA upgraded the investigation into the ACU Defect in order to expand the scope of affected vehicles to, *inter alia*, include additional vehicle

---

[28] *See* NHTSA Recall No. 18V-137, *supra* note 20; NHTSA Recall No. 18V-363, *supra* note 23.
[29] 2019 ODI Resume, *supra*, note 1.
[30] See NHTSA, Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know, (Revised Aug. 2017) https://www-odi.nhtsa.dot.gov/recalls/documents/MVDefects andRecalls.pdf.
[31] *Id*.

22

manufactures, to identify the Class Vehicles, and to include the equipment supplier—the ZF-TRW Defendants—in the investigation.[32]

60.   The ACU Defect poses a significant safety risk to Plaintiff and Class members. The NHTSA has documented numerous crashes in which the ACU Defect caused non-deployment of the airbag systems, resulting in injuries and deaths.[33]

61.   Most recently, NHTSA ODI "identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments."[34] As explained by NHTSA ODI, "[t]he crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection" where "both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs."[35]

---

[32] 2019 ODI Resume, *supra* note 1.
[33] *Id*. at 2,
[34] *Id*.
[35] *Id*.

23

**C.    Defendants Knew of the ACU Defect and the Risks to Vehicle Operators and Passengers**

62.   The Manufacturer Defendants knew or should have known of the ZF-TRW ACUs' inherent design defect through their participation in the development, design, and testing of the ACUs and through incidents of ACU failure investigated by ZF-TRW and reported to the NHTSA or identified by the NHTSA.

63.   As early as August 2011, ZF-TRW and Hyundai/Kia had knowledge of the ACU Defect. At the request of the parts and service arm of Hyundai and Kia—Hyundai Mobis—in August 2011 ZF-TRW analyzed the ACU from a Kia Forte in China. The Forte was involved in an accident in which the airbags purportedly did not deploy, and ZF-TRW observed that the ACU ASIC from that vehicle showed signs of damage consistent with EOS.[36]

64.   In March 2012, Hyundai Mobis again asked ZF-TRW to analyze an ACU from a Kia Forte that was involved in an accident—this one in Egypt—in which the airbags purportedly did not deploy. Again, ZF-TRW observed that the ACU ASIC showed signs of damage consistent with EOS.[37]

---

[36] *Chronology*, *supra* note 14, at 2.
[37] *Id.*

24

65.   In May 2012, ZF-TRW communicated with Hyundai/Kia and Hyundai
Mobis regarding its investigation of observed incidents of EOS in the field.[38]

66.   Throughout 2015, ZF-TRW and Hyundai/Kia continued to investigate
incidents of ACU Defect, including by analyzing or attempting to analyze data
from the ACUs of vehicles involved in non-deployment incidents around the
globe, including a February 2015 incident involving a Hyundai Sonata, a May
2015 incident involving a Kia Forte, and two separate December 2015 incidents
involving Kia Fortes.[39]

67.   Hyundai/Kia and ZF-TRW continued their investigations throughout
2016 and 2017, as non-deployment incidents continued to occur, including an
August 2016 investigation into a non-deployment event involving a Kia Forte, a
November 2016 investigation into a non-deployment event involving a Hyundai
Sonata, February 2017 investigation into a non-deployment event involving a
Hyundai Sonata, March 2017 investigation into a non-deployment event involving
a Kia Forte, and an August 2017 investigation into two separate incidents
involving Hyundai Sonatas.[40]

---

[38] *Id.*
[39] *Id.*
[40] *Id.*

25

68.  Despite the occurrence of non-deployment events connected to ZF-TRW ACUs over a more than four-year period, Hyundai and Kia failed to issue recalls of affected vehicles until 2018.

69.  On February 27, 2018, Hyundai filed a recall relating to the ACU Defect affecting approximately 155,000 vehicles.[41] Hyundai reported to the NHTSA that "post-collision inspections of the air bag control units (ACUs) showing that an electrical overstress condition (EOS) of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern."[42] At that time, Hyundai reported that it had "not identified a remedy for this recall" and disclosed that the "cause of the EOS is being investigated with the ACU supplier, ZF-TRW."[43]

70.  On June 1, 2018, Kia filed a recall relating to the ACU Defect affecting approximately 507,000 vehicles, reporting to the NHTSA that "recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The [ACU] in these vehicles may be susceptible to [EOS] during certain frontal crash events."[44]

---

[41] NHTSA Recall No. 18V-137.
[42] 2018 ODI Resume, *supra* note 3, at 1.
[43] *Id*.
[44] NHTSA Recall No. 18V-363, *supra* note 20, at 1.

26

71.   In addition, ZF-TRW and certain of the Manufacturer Defendants have been the subject of customer complaints, personal injury and wrongful death lawsuits alleging that airbags failed to deploy in accidents as a result of the ACU Defect. As of July 2019, ZF-TRW's defective ACUs are reported to be responsible for as many as eight deaths and six serious injuries, worldwide.[45]

72.   In September 2016, FCA issued a recall relating to the ACU Defect affecting over 1.4 million vehicles, reporting to the NHTSA that "vehicles may experience loss of air bag and seat belt pretensioner deployment capability in certain crash events due to a shorting condition resulting in a negative voltage transient that travels to the Occupant Restraint Controller ("ORC") via the front impact sensor wires damaging an Application Specific Integrated Circuit ("ASIC") in the ORC."[46]

73.   The recalls issued by FCA, Hyundai, and Kia in 2016 and 2018 were not sufficient to protect consumers from the dangers posed by ZF-TRW's defective ACUs, as indicated by the NHTSA's expanded investigation into the ACU Defect, affecting more than 12 million vehicles.[47]

---

[45] Mike Spector, *supra* note 25; Benjamin Raven, *supra* note 7.
[46] NHTSA Recall No. 16V-668, *supra* note 18.
[47] 2019 ODI Resume, *supra* note 1.

27

**D.    The Class Vehicles**

74.   "Class Vehicles," as used in this Complaint, include those vehicles sold in the United States and equipped at the time of sale with airbag and supplemental restraint systems containing the ACU Defect. Class Vehicles contain defective ACUs manufactured by ZF-TRW that suffer from an electrical overstress condition ("EOS") that causes electric components in the defective ACUs to malfunction, resulting in deployment failure of airbags and supplemental restraints when Class Vehicles suffer an impact that necessitates deployment of these critical safety systems. As a result of the ACU Defect, the airbag and supplemental restraint systems pose unreasonable and dangerous safety risks to Plaintiff and Class members, including the risk of injury and death.

75.   Class Vehicles include the following vehicle makes, models, and model years containing ACUs manufactured by ZF-TRW:[48]

| Vehicle Make | Model | Model Year(s) |
|:---:|:---:|:---:|
| Acura | RLX | 2014-2019 |

---

[48] *See Air Bag ACU Electrical Overstress: All Products Associated with this Investigation*, NHTSA, https://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=PROD&prodType=E&targetCategory=A&searchCriteria.model=AIR+BAG+CONTROL+UNIT&stats=3507717%2C1%2C1%2C0%2C0%2CAIR+BAG+CONTROL+UNIT&makeStats=&jsonBaseURL=%2Fdownloads%2Ffolders%2F&searchCriteria.make=ZF&searchCriteria.prod_ids=3507717 (last visited Aug. 1, 2019).

28

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| Acura | RLX Hybrid | 2014-2019 |
| Acura | TL | 2012-2014 |
| Acura | TLX | 2015-2017 |
| Acura | TSX | 2012-2014 |
| Acura | TSX Sport Wagon | 2012-2014 |
| Dodge | Nitro | 2010-2011 |
| Dodge | Ram 1500 | 2009-2012 |
| Dodge | Ram 2500 | 2010-2012 |
| Dodge | Ram 3500 | 2010-2012 |
| Dodge | Ram 4500 | 2011-2012 |
| Dodge | Ram 5500 | 2011-2012 |
| Fiat | 500 | 2012-2019 |
| Honda | Accord | 2013-2015 |
| Honda | Accord Hybrid | 2014-2015 |
| Honda | Civic | 2012-2015 |
| Honda | Civic GX | 2012-2015 |
| Honda | Civic Hybrid | 2013-2015 |
| Honda | Civic SI | 2012-2015 |
| Honda | CR-V | 2012-2016 |
| Honda | Fit | 2012-2017 |
| Honda | Fit EV | 2013-2014 |
| Honda | Ridgeline | 2012-2014 |
| Hyundai | Sonata | 2013-2019 |

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| Hyundai | Sonata Hybrid | 2013-2019 |
| Jeep | Compass | 2015-2017 |
| Jeep | Liberty | 2010-2012 |
| Jeep | Patriot | 2015-2017 |
| Jeep | Wrangler | 2010-2018 |
| Kia | Forte | 2013 |
| Kia | Forte Koup | 2013 |
| Kia | Optima | 2013-2019 |
| Kia | Optima Hybrid | 2012-2016 |
| Kia | Sedona | 2014 |
| Mitsubishi | Lancer | 2013-2017 |
| Mitsubishi | Lancer Evolution | 2013-2015 |
| Mitsubishi | Lancer Ralliart | 2014-2015 |
| Mitsubishi | Lancer Sportback | 2013-2016 |
| Mitsubishi | Outlander | 2013 |
| Toyota | Avalon | 2012-2018 |
| Toyota | Avalon Hybrid | 2013-2018 |
| Toyota | Corolla | 2011-2019 |
| Toyota | Corolla iM | 2017-2018 |
| Toyota | Corolla Matrix | 2011-2013 |
| Toyota | Sequoia | 2012-2017 |
| Toyota | Tacoma | 2012-2019 |
| Toyota | Tundra | 2012-2017 |

76.   ZF-TRW is a Tier-one supplier to the Manufacturer Defendants of the defective ACUs.[49]

77.   The ZF-TRW Defendants designed and manufactured defective ACUs with design and/or manufacturing flaws that cause the ACU Defect and result in nondeployment of airbags and supplemental restraints in a crash.

78.   The Manufacturer Defendants equipped the Class Vehicles with airbag and supplemental restraint systems containing the ACU Defect.

79.   Defendants did not disclose the ACU Defect to Plaintiff or Class members.

80.   Despite their knowledge of the ACU Defect and corresponding serious and unreasonable safety risks to Plaintiff and Class members, the Manufacturer Defendants have not recalled the Class Vehicles.

81.   By designing, manufacturing, assembling, inspecting, distributing, and/or selling defective ACUs and/or Class Vehicles equipped with airbag and supplemental restraint systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

82.   Upon information and belief, the ACU Defect was caused, by among other things, ZF-TRW's design, manufacture, or assembly of the ACUs.

_____

[49] 2019 ODI Resume, *supra* note 1.

31

83.   As alleged herein, Plaintiff and Class members were unaware of the ACU Defect when they purchased or leased Class Vehicles that contain the ACU Defect. Plaintiff and Class members overpaid for their vehicles, have suffered diminished market value, did not receive the benefit of their bargain, and suffered other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and/or omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the ACU Defect and its associated unreasonable and dangerous safety risks.

84.   The presence of the ACU Defect in the Class Vehicles is a fact material to Plaintiff and Class members because it exposes drivers and passengers of the Class Vehicles to unreasonable safety risks and because it diminishes the value of the Class Vehicles.

## VI.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

85.   As alleged herein, Plaintiff and Class Members unknowingly purchased or leased Class Vehicles that contain the ACU Defect and suffered diminished market value, did not receive the benefit of their bargain, and suffered other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and/or omissions regarding the standard, quality or

32

grade of the Class Vehicles and/or the existence of the ACU Defect and its associated safety risks. The fact that the Class Vehicles suffer from the ACU Defect is material to Plaintiff and Class Members because it diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

86.   Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23(a) and 23(b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses (collectively, the "Classes"):

**Nationwide Class:** All persons or entities in the United States who purchased or leased Class Vehicles that were marketed and sold with the ACU Defect.

87.   In addition to the Nationwide class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff seeks to represent the New York State Class as well as any subclasses or issue classes as Plaintiff may propose and/or the Court may designate at the time of class certification:

**New York State Class:**  All persons or entities in the state of New York who purchased or leased Class Vehicles that were marketed and sold with the ACU Defect.

33

88.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

89.   Excluded from each Class are Defendants; their employees, officers, directors, legal representatives, heirs, successors, wholly or partly owned affiliates and subsidiaries; Class Counsel and their employees; and the judicial officers and their immediate family members; and associated court staff assigned to this case.

**B.    Class Certification Requirements**

90.   Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff and Class members were injured by Defendants' omissions, as detailed above.

91.   **Numerosity: Rule 23(a)(1).** The Class members are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believe that there are millions of Class Vehicles nationwide, the precise number of Class members is unknown to Plaintiff, but may be ascertained from vehicle registration records, production records, and other information kept by Defendants' or third parties' in the ordinary course of business in their books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or

34

published notice, in compliance with Federal Rules of Civil Procedure 23 (c)(1)(2)(A) and/or (B).

92. **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including without limitation:

              i.      whether the Class Vehicles contain the ACU Defect;

             ii.     whether the Defendants engaged in the conduct alleged herein;

            iii.    whether the Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles containing the ACU Defect into the stream of commerce in the United States;

            iv.    whether the ACU Defect is a design defect and/or a defect in material, manufacturing, and/or workmanship;

            v.     whether Defendants knew or should have known about the ACU Defect;

            vi.    whether Defendants knew or should have known about the safety risk posed by the presence of the ACU Defect in the Class Vehicles;

35

vii.     whether Defendants had a duty to disclose the ACU

Defect in the Class Vehicles to Plaintiff and Class Members;

viii.    whether Defendants intentionally and knowingly omitted,

concealed, suppressed, or misrepresented material facts concerning

the grade, standard, or quality of the ACU Defect and/or Class

Vehicles;

ix.     whether Defendants made material omissions concerning

the grade, standard, or quality of the ACU Defect and/or Class

Vehicles;

x.     whether Defendants' omissions regarding the ACU

Defect and/or Class Vehicles were material facts reasonable

consumers would have considered in deciding whether to purchase or

lease a Class Vehicle;

xi.     whether Defendants violated 15 U.S.C. § 2301, *et seq.*;

xii.    whether Defendants breached their express warranties to

Plaintiff and Class members;

xiii.   whether Defendants breached their implied warranties to

Plaintiff and Class members;

xiv.    whether the Defendants' conduct violates consumer

protection statutes and constitutes an unconscionable commercial

practice, deception, fraud, false pretense, false promise, and/or

fraudulent concealment as asserted herein;

xv.    whether the Manufacturer Defendants were unjustly

enriched by their conduct;

xvi.    whether Plaintiff and Class members overpaid for their

Class Vehicles; and

xvii.    whether Plaintiff and Class members are entitled to

damages and other monetary relief and, if so, in what amount.

93.    **Typicality: Rule 23(a)(3).** Plaintiff's claims are typical of the other

Class members' claims because, among other things, all Class members were

comparably injured through the same course of Defendants' wrongful conduct as

described above.

94.    **Adequacy: Rule 23(a)(4).** Plaintiff is an adequate Class

representative because his interests do not conflict with the interests of the other

Class members that Plaintiff seeks to represent; Plaintiff has retained counsel

competent and experienced in complex class action litigation; and Plaintiff intends

37

to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

95. **Declaratory and Injunctive Relief: Rule 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

96. **Superiority: Rule 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members individually are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for Class members to individually seek redress for the Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

38

## VII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### A.    Discovery Rule

97.   Plaintiff and Class members did not discover and could not have discovered through the exercise of reasonable diligence, Defendants' deception.

98.   Plaintiff and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the true nature of the Class Vehicles. Plaintiff and Class members would have no reason to doubt the safety and effectiveness of the defective ACUs installed in the Class Vehicles until either the ACU Defect manifested in an accident or the Class Vehicles were recalled. Even then, Plaintiff and Class members could not have discovered their claims because of Defendants' active deception regarding the true nature and scope of the ACU Defect. Plaintiff and Class members had no practical way to safely or rigorously test the safety and effectiveness of the Class Vehicles independently.

99.   Plaintiff and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about the Class Vehicles until shortly before this action was filed.

100. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

39

**B.    Equitable Tolling**

101. All applicable statutes of limitation have also been tolled because, as a result of Defendants knowing, active and ongoing fraudulent concealment of the facts alleged herein, Plaintiff could not, through the exercise of reasonable diligence, have learned of the ACU Defect until recently and any delay in bringing suit is and was excusable.

102. Defendants knew or had reason to know that the ACUs were defective. As of this filing, the NHTSA is investigating the issue, FCA, Hyundai, and Kia have recalled certain affected vehicles, and ZF-TRW and the NHTSA have identified additional incidents of ACU failure resulting in injury and death.

103. For the foregoing reasons, Plaintiff could not, through the exercise of reasonable diligence, have learned of the ACU Defect until recently, and thus, all applicable statutes of limitation have been tolled as result of Defendants' knowing concealment of the defect alleged herein.

**C.    Equitable Estoppel**

104. Defendants were and are under a continuous duty to disclose to Plaintiff and Class Members the true nature of the Class Vehicles. Instead, as described above, Defendants actively concealed the true character of the Class Vehicles. Plaintiff and Class Members reasonably relied on Defendant's misrepresentations

40

1
2
3
4
5

and omissions of the material facts about the ACU Defects, and Defendant is therefore estopped from relying on any statutes of limitation in defense of this action.

6

## VIII.  CLAIMS FOR RELIEF

7

**A.     Claims Asserted on Behalf of the Nationwide Class**

8
9
10

**COUNT I**
**IMPLIED AND EXPRESS WARRANTY**
**Magnuson–Moss Warranty Act (15 U.S.C. §§ 2301, et seq.)**

11
12

105. Plaintiff realleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

13
14
15

106. Plaintiff asserts this cause of action on behalf of himself and the other Class members.

16
17
18
19

107. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d) and because Plaintiff alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

20
21
22

108. Defendants' ACUs and Class Vehicles are "consumer products," as that term is defined in 15 U.S.C. § 2301(1).

23
24
25

109. Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

26
27
28
28

41

110. Defendants are each a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. §§ 2301(4) and (5).

111. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

112. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give notice and an opportunity to cure to the Manufacturer Defendants until such time as, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court determines the representative capacity of Plaintiff.

113. As described herein, the Manufacturer Defendants provided Plaintiff and Class members with "express warranties" as defined in 15 U.S.C. § 2301(6), which warranties included promises to repair or provide for the replacement of covered defective components, which defects stem from defects in material or workmanship, including the components impacted by the ACU Defect, without cost to owners and lessees of the Class Vehicles. FCA provides a new vehicle basic limited warranty for a period of three years or 36,000 miles, whichever occurs first, and covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or

42

factory preparation. Honda provides a new vehicle limited warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repair or replacement of factory installed parts if they fail to function properly during normal use to vehicles that fail to function properly during normal use. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or installed by Mitsubishi that is defective in material or factory workmanship under normal use and maintenance. Toyota provides a new vehicle limited warranty for a period of three years or 36,000 miles and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of

43

any part supplied by Toyota that is defective in material or workmanship, under normal use and maintenance.

114. The Manufacturer Defendants breached these express warranties, as described in more detail above with respect to the defective Class Vehicles.

115. As described herein, Defendants provided Plaintiff and Class members with "implied warranties" as defined in 15 U.S.C. § 2301(7), including an implied warranty of merchantability in connection with the purchase of lease of the Class Vehicles, which warranty included that the ACUs and Class Vehicles were safe and fit for their ordinary purpose.

116. Defendants breached these implied warranties, as described in more detail above with respect to the defective Class Vehicles.

117. By Defendants' conduct as described herein, including knowledge of the ACU Defect described above and Defendants' action, and inaction, in the face of their knowledge and failure to inform Plaintiff and Class members of the ACU Defect and risk to safety, and failure to within a reasonable time repair or remedy the ACU Defect without charge, each Defendant has failed to comply with its obligations under its express and implied promises, warranties, and representations.

44

118. In its capacity as warrantor, and by the conduct described herein, any attempts by any Defendant to limit the implied warranties in a manner that would exclude coverage is unconscionable and any such effort to disclaim, or otherwise limit, liability is null and void.

119. All jurisdictional prerequisites have been satisfied.

120. Plaintiff and Class members are in privity with Defendants in that they purchased the Class Vehicles from Defendants or Defendants' agents.

121. As a result of Defendants' breaches of warranties, Plaintiff and Class members are entitled to revoke their acceptance of the Class Vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

**COUNT II**
**FRAUD/FRAUD BY CONCEALMENT AGAINST THE MANUFACTUR DEFENDANTS**

122. Plaintiff realleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

123. The Manufacturer Defendants had a duty to provide honest and accurate information to its customers, including Plaintiff and Class members, so that customers could make informed decisions on the substantial purchase of automobiles.

45

124. The Manufacturer Defendants withheld and concealed from Plaintiff and Class members true and accurate information known to Defendants about the ACU Defect, as described in this Complaint.

125. The misrepresentations, nondisclosures, and /or concealment of material facts made by the Manufacturer Defendants to Plaintiff and Class members, as described herein, were known, or through reasonable care should have been known, to Defendants to be false and material.

126. The Manufacturer Defendants intended to mislead Plaintiff and Class members and intended that Plaintiff and Class members rely on these misrepresentations and nondisclosures.

127. The Manufacturer Defendants have still not made full and adequate disclosure regarding the ACU Defect and continue to conceal material information and to defraud Plaintiff and Class members regarding the ACU Defect and the Class Vehicles.

128. Plaintiff and Class members reasonably relied on the Manufacturer Defendants' representations and nondisclosures.

129. Plaintiff and Class members were unaware of the omitted and concealed material facts regarding the ACU Defect.

46

130. Had Plaintiff and Class members been aware of the ACU Defect and the Manufacturer Defendants' misrepresentations, nondisclosures, and /or concealment of material facts regarding the ACU Defect, Plaintiff and Class members either would not have purchased or leased the Class Vehicles or would not have paid as much for their Class Vehicles.

131. As a direct and proximate result of the Manufacturer Defendants' conduct as described herein, Plaintiff and Class members were harmed in an amount that will be proven at trial.

## COUNT III
## FRAUD/FRAUD BY CONCEALMENT AGAINST THE ZF-TRW DEFENDANTS

132. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

133. The ZF-TRW Defendants had a duty to provide honest and accurate information to its customers, including Plaintiff and Class members, so that customers could make informed decisions on the substantial purchase of automobiles.

134. The ZF-TRW Defendants withheld and concealed from Plaintiff true and accurate information known to Defendants about the ACU Defect, as described in this Complaint.

47

135. The misrepresentations, nondisclosures, and /or concealment of material facts made by the ZF-TRW Defendants to Plaintiff and Class members, as described herein, were known, or through reasonable care should have been known, to Defendants to be false and material.

136. The ZF-TRW Defendants intended to mislead Plaintiff and Class members and intended that Plaintiff and Class members rely on these misrepresentations and nondisclosures.

137. The ZF-TRW Defendants have still not made full and adequate disclosure regarding the ACU Defect and continue to conceal material information and to defraud Plaintiff and Class members regarding the ACU Defect and the Class Vehicles.

138. Plaintiff and Class members reasonably relied on the ZF-TRW Defendants' representations and nondisclosures.

139. Plaintiff and Class members were unaware of the omitted and concealed material facts regarding the ACU Defect.

140. Had Plaintiff and Class members been aware of the ACU Defect and the ZF-TRW Defendants' misrepresentations, nondisclosures, and /or concealment of material facts regarding the ACU Defect, Plaintiff and Class members either would

48

not have purchased or leased the Class Vehicles, or would not have paid as much

for their Class Vehicles.

141. As a direct and proximate result of the ZF-TRW Defendants' conduct as

described herein, Plaintiff and Class member were harmed in an amount that will be

proven at trial.

## COUNT IV
## UNJUST ENRICHMENT AGAINST THE MANUFACTURER
## DEFENDANTS

142. Plaintiff realleges and incorporates by reference all preceding

paragraphs as though fully set forth herein.

143. Because of its wrongful act and omissions, the Manufacturer

Defendants charged a higher price for the Class Vehicles' than the Class Vehicles'

true value.

144. The Manufacturer Defendants have benefited and been enriched by its

conduct alleged described in this Complaint and by Plaintiff and Class members'

purchase of the Class Vehicles.

145. The Manufacturer Defendants have knowledge of this benefit.

146. The Manufacturer Defendants have voluntarily accepted and retained

this benefit.

49

147. The Manufacturer Defendants have been unjustly enriched at the expense of Plaintiff and Class members, and the retention of this benefit under the circumstances would be inequitable.

148. Plaintiff seeks an order requiring the Manufacturer Defendants to make restitution to Plaintiff and to the other Class members.

**B.    Claims Asserted on Behalf of the New York Class**

**COUNT V**
**DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF N.Y. LAW**
**(N.Y. GEN. BUS. LAW §349)**
**AGAINST ALL DEFENDANTS**

149. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

150. Plaintiff brings this claim on behalf of all Class members, or alternatively Class members that reside and/or purchased or leased their Class Vehicles in New York, against all Defendants.

151. Plaintiff and Class members are "persons" within the meaning of New York General Business Law ("NY GBL"), N.Y. GEN. BUS. LAW §349(h). Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW §349.

152. NY GBL §349 makes "[d]eceptive acts or practices in the conduct of any business, trade or commerce" unlawful.

50

153. In the course of their business, Defendants violated the NY GBL by actively concealing and/or by failing to disclose the risks and dangers posed by the Class Vehicles and/or the defective ACU installed within.

154. Defendants have deceptively marketed, promoted, distributed, and sold Class Vehicles and/or the defective ACUs installed within. Defendants engaged in one or more of the following unfair or deceptive acts or practices which are prohibited by the NY GBL: representing to consumers that the Class Vehicles and/or the airbag systems and supplemental restraint systems installed in the Class Vehicles have characteristics or benefits that the Class Vehicles do not have; representing that Class Vehicles are of a particular standard and quality when they are not; and/or advertising the Class Vehicles as possessing characteristics, benefits, meeting a particular standard, or quality, with the intent not to sell them as advertised.

155. Defendants have had knowledge of the ACU Defect in the defective ACU and in the Class Vehicles and have failed to disclose to Plaintiff and Class members and/or actively concealed the risks and dangers to Plaintiff and Class members posed by the Class Vehicles and/or the ACU Defect within the airbag systems installed in them.

51

156. By reason of the foregoing, Defendants engaged in unfair or deceptive acts and business practices in violation of the NY GBL. Defendants deliberately withheld the information about the ACU Defect, including the propensity of the defective airbag systems and supplemental restraints to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

157. Defendants, in the course of their business, willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defects discussed above. Defendants repeatedly asserted that the Class Vehicles and/or the ACU Defect within the airbag systems installed in them were safe, reliable, and of high quality, and claimed to be reputable vehicle and component manufacturers that value quality and safety.

158. Defendants' unfair or deceptive acts and business practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of Class Vehicles and/or the ACU Defect within the airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

52

159. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the ACU Defect within the airbag systems installed in them with an intent to mislead Class members.

160. Defendants knew or should have known that their conduct violated the NY GBL.

161. To protect their profits, to avoid recall and remediation costs, and to avoid negative publicity and injury to the brands, Defendants concealed the dangers and risks to Plaintiff and Class members posed by the Class Vehicles and/or the ACU Defect within the airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

162. Defendants owed Plaintiff and Class members a duty to disclose the true safety and reliability of the Class Vehicles and/or the ACU Defect within the airbag systems installed in them because Defendants possessed exclusive knowledge of the dangers and risks posed by ACU Defect; intentionally concealed the foregoing from Plaintiff and the Class; and/or made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

53

163. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the ACU Defect within the airbag systems installed in them, and because disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the significant negative association attached to driving vehicles with defective airbag systems and ACUs, Class Vehicles by Defendants' conduct, are now worth significantly less than they otherwise would be.

164. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Class members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

165. Plaintiff and Class members suffered ascertainable loss caused by Defendants' misrepresentations and failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the ACU Defect within the airbag systems installed in them, Plaintiff and Class members would have paid less for their vehicles or would not have purchased or

54

leased their vehicles at all. Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

166. As a result of Defendants' misconduct, Plaintiff and Class members did not receive the benefit of their bargain.

167. As a direct and proximate result of Defendant's violations of the NY GBL, Plaintiff and Class members have suffered injury-in-fact and/or actual damage.

168. Pursuant to N.Y. GEN. BUS. LAW §349, Class members seek an order awarding damages, treble damages, and any other just and proper relief under the NY GBL.

**COUNT VI**
**BREACH OF IMPLIED WARRANTIES**
**(N.Y. U.C.C. LAW §§2-314, 2-315, 2A-103, AND 2A-212)**
**AGAINST ALL DEFENDANTS**

169. Plaintiff brings this claim on behalf of all Class members, or alternatively Class members that reside and/or purchased or leased their Class Vehicles in New York, against all Defendants.

170. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under N.Y. U.C.C.

55

LAW §2-104(1), and "sellers" of the Class Vehicles and/or the ACU Defect within

the airbag systems installed in them under N.Y. U.C.C. LAW §2-103(1)(d).

171. The Manufacturer Defendants are and were at all relevant times

"lessors" of motor vehicles under N.Y. U.C.C. LAW §2A-103(1)(p).

172. Class Vehicles and/or defective ACUs installed in them are and were at

all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1)

and 2A-103(1)(h).

173. A warranty that the Class Vehicles and/or the ACU Defect within the

airbag systems installed in them were in merchantable condition and fit for their

ordinary purpose is implied by law pursuant to N.Y. U.C.C. LAW §§2-314 and

2A-212.

174. In addition, a warranty that the Class Vehicles and/or the defective

ACUs installed in them were fit for their particular purpose is implied by law

pursuant to N.Y. U.C.C. LAW §2-315. Defendants knew at the time of sale of the

Class Vehicles and/or the defective ACUs installed in them, that the Class intended

to use the vehicles in a manner requiring a particular standard of performance and

durability, and that the Class was relying on Defendants' skill and judgment to

furnish suitable products for this particular purpose.

56

175. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and supplemental restraints during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

176. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by consumers within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

177. As a direct and proximate result of Defendants' breach of its implied warranties, Class members have been damaged in an amount to be determined at trial.

**COUNT VII**
**BREACH OF EXPRESS WARRANTIES**
**(N.Y. U.C.C. LAW §§2-313, 2A-103, AND 2A-210)**
**AGAINST THE MANUFACTURER DEFENDANTS**

57

178. Plaintiff brings this claim on behalf of all Class members, or alternatively Class members that reside and/or purchased or leased their Class Vehicles in New York, against the Manufacturer Defendants.

179. The Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under N.Y. U.C.C. LAW §2-104(1), and "sellers" of the Class Vehicles and/or defective ACUs under §2-103(1)(d).

180. The Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. U.C.C. LAW §2A-103(1)(p).

181. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2A-103(1)(h).

182. In connection with the purchase of all Class Vehicles, The Manufacturer Defendants provided express warranties. FCA provides a new vehicle basic limited warranty for a period of three years or 36,000 miles, whichever occurs first, and covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. Honda provides a new vehicle limited warranty for a period of three years or 36,000 miles, whichever occurs first,

58

and covers any repair or replacement of any part that is defective in material or

workmanship under normal use. Honda provides a new vehicle limited warranty

for a period of three years or 36,000 miles, whichever occurs first, and covers any

repair or replacement of any part that is defective in material or workmanship

under normal use. Hyundai provides a new vehicle limited warranty for a period of

five years or 60,000 miles, whichever occurs first, and covers the repair or

replacement of any component manufactured or originally installed by Hyundai

that is defective in material or factory workmanship, under normal use and

maintenance. Kia provides a limited basic warranty for a period of five years or

60,000 miles, whichever occurs first, and covers repair or replacement of factory

installed parts if they fail to function properly during normal use to vehicles that

fail to function properly during normal use. Mitsubishi provides a new vehicle

limited warranty and a restraint system warranty for a period of five years or

60,000 miles, whichever occurs first, and covers the repair or replacement of any

component manufactured or installed by Mitsubishi that is defective in material or

factory workmanship under normal use and maintenance. Toyota provides a new

vehicle limited warranty for a period of three years or 36,000 miles and a restraint

system warranty for a period of five years or 60,000 miles, whichever occurs first,

and covers repairs and adjustments needed to correct defects in materials or

59

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
28

workmanship of any part supplied by Toyota that is defective in material or workmanship, under normal use and maintenance.

183. In addition, the Manufacturer Defendants' made various oral and written representations regarding the Class Vehicles' durability, safety, and performance, which representations constituted express warranties to the Class.

184. The Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Class members purchased or leased their Class Vehicles.

185. The ACU Defect in the defective airbag systems were present in the Class Vehicles at the time of sale or lease and within the warranty periods but Class members had no knowledge of the existence of the ACU Defect, which was known and concealed by the Manufacturer Defendants. Despite the applicable warranties, the Manufacturer Defendants failed to inform Class members that the Class Vehicles contained the ACU Defect during the warranty periods, which wrongfully transfers the costs of repair or replacement of the defective airbag systems to Class members.

186. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation, including the

60

critical safety function of properly deploying airbags and supplemental restraints in the event of a crash.

187. Plaintiff and Class members could not have reasonably discovered the ACU Defect.

188. The Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

189. The Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Manufacturer Defendants knew the Class Vehicles contained the ACU Defect and had a safety risk associated with the ACU Defect. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and supplemental restraints from performing as warranted.

190. The Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by knowingly selling and leasing to Plaintiff and to Class members Class Vehicles containing defects in material that were never disclosed to the Class; by failing to repair or

61

replace the defective Class Vehicles at no cost within the warranty period; by

ignoring, delaying responses to, and denying warranty claims in bad faith; and by

supplying Plaintiff and Class Members products and materials that failed to

conform to the representations made by the Manufacturer Defendants.

191. The Class has given the Manufacturer Defendants a reasonable

opportunity to cure their breach of express warranty or, alternatively, were not

required to do so because such an opportunity would be unnecessary and futile

given that the repairs or replacements offered by Manufacturer Defendants can

neither cure the defect in the Class Vehicles nor resolve the incidental and

consequential damages flowing therefrom.

192. The Manufacturer Defendants' written warranties fail as to their

essential purpose and the recovery of Class members is not limited to the

warranties' remedies.

193. The Manufacturer Defendants were provided notice of the ACU Defect

in the defective airbag systems by numerous consumer complaints made to their

authorized dealers nationwide, complaints to NHTSA, and through their own

testing. Affording Defendants a reasonable opportunity to cure their breach of

written warranties would be unnecessary and futile here because the Manufacturer

Defendants have known of and concealed the ACU Defect and, on information and

62

belief, have refused to repair or replace the defective airbag systems in the Class

Vehicles free of charge within or outside of the warranty periods despite the

defect's existence at the time of sale or lease of the Class Vehicles, and within the

applicable warranty periods.

194. Any attempt by the Manufacturer Defendants to disclaim or limit

recovery to the terms of the express warranties is unconscionable and

unenforceable here. Specifically, the Manufacturer Defendants' warranty

limitations are unenforceable because they knowingly sold or leased a defective

product without informing consumers about the defect. The time limits contained

in the Manufacturer Defendants' warranty periods were also unconscionable and

inadequate to protect Class members. Among other things, Class members did not

determine these time limitations, the terms of which unreasonably favored the

Manufacturer Defendants. A gross disparity in bargaining power existed between

the Manufacturer Defendants and Class members, and the Manufacturer

Defendants knew or should have known that the Class Vehicles were defective at

the time of sale or lease and that the defective airbag systems would fail to deploy

during an accident.

195. Further, the limited warranties promising to repair and/or correct a

manufacturing defect fail in their essential purpose because the contractual

63

remedies are insufficient to make Class members whole because, on information and belief, the Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

196. The Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Class members were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

197. Plaintiff and Class members have been excused from performance of any warranty obligations as a result of the Manufacturer Defendants' conduct described herein.

198. As a direct and proximate result of the Manufacturer Defendants' breach of their express warranties, Class members have been damaged in an amount to be determined at trial.

199. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Class members of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

64

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and New York State Class, respectfully request that the Court grant certification of the proposed Nationwide Class and New York State Class, designate the Plaintiff as the named representative of the Nationwide Class and New York State Class, appoint the undersigned as Class Counsel, designate any appropriate issue classes or subclasses under the applicable provisions of Federal Rule of Civil Procedure 23, and that the Court enter judgment in Plaintiff's favor and against Defendants, as follows:

A.    awarding actual, general, incidental, compensatory, consequential, and statutory damages on the claims asserted above as applicable and, in an amount, to be proven at trial;

B.    awarding exemplary and punitive damages in an amount to be proven at trial;

C.    awarding reasonable attorneys' fees and costs;

D.    awarding interest on the foregoing;

E.    enjoining the wrongful conduct alleged herein, ordering Defendants to immediately cease deceptive distribution, sale, and lease of the Class Vehicles, and such other injunctive relief the Court deems just and proper;

65

F.      providing all equitable relief the Court deems appropriate, including rescission, restitution, and disgorgement of unjust enrichment; and

G.      providing any other relief the Court deems just and proper.

## X.    DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, pursuant to Fed. R. Civ. P. 38(b), hereby demands a trial by jury on all the issues so triable.

DATED:  August 15, 2019

Respectfully submitted by,

66

By:  */s/ Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Anne K. Davis (SBN 267909)
adavis@bfalaw.com
Joshua Samra (SBN 313050)
jsamra@bfalaw.com
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

Peter Safirstein (*pro hac vice forthcoming*)
psafirstein@safirsteinmetcalf.com
Elizabeth S. Metcalf (*pro hac vice forthcoming*)
emetcalf@safirsteinmetcalf.com
SAFIRSTEIN METCALF LLP
350 Fifth Avenue, 59th Floor
New York, NY 10118
Telephone: (212) 201-2855
Facsimile: (212) 201-2858

Ex Kano S. Sams II (SBN 192936)
esams@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Michael Van Ness*

67